**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**LUIS GUANAN, MOISES MORALES, and**     **CASE NO. 19 CV 1426**
**MARLON NIETO, on behalf of themselves**
**and others similarly situated,**

         **Plaintiffs,**

    v.

**68TH ST. CAFE INC., d/b/a SOLE BISTRO**
**ITALIANO and d/b/a LUCE RESTAURANT**
**AND ENOTECA, DRITON MILA,**
**RAMAZAN MILA, and GAZMEND**
**HODZIC,**
         **Defendants.**
-----------------------------------------------------------x


**PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S**
**AUGUST 15, 2019 ORDER DENYING PLAINTIFFS' MOTION FOR**
**CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE**


JOSEPH & KIRSCHENBAUM LLP
D. Maimon Kirschenbaum
Denise A. Schulman
32 Broadway, Suite 601
New York, NY 10004

*Attorneys for Plaintiffs, proposed FLSA Collective,*
*and proposed Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................i

I.   PRELIMINARY STATEMENT .................................................................................................. 1

II.  BACKGROUND ........................................................................................................................ 1

III. ARGUMENT .............................................................................................................................. 3

　A.   Fed. R. Civ. P. 72(a) Standard ............................................................................................ 3

　B.   The Order Was Clearly Erroneous Or Contrary To Law ................................................. 3

IV.  CONCLUSION ........................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*Chen v. Oceanica Chinese Rest., Inc.*, No. CV 13-4623,
    2014 U.S. Dist. LEXIS 46007 (E.D.N.Y. Feb. 28, 2014)..........................................5,6

*Escamilla v. Uncle Paul's Pizza & Café Inc.*, No. 16 CV 06305,
    2017 U.S. Dist. LEXIS 206731 (S.D.N.Y. May 18, 2017).......................................6

*Gaston v. Valley Nat'l Bancorp*, No. 17 CV 1886,
    2018 U.S. Dist. LEXIS 148388 (E.D.N.Y. Aug. 30, 2018).......................................3

*Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516 (S.D.N.Y. 2015)............................10,11

*Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265,
    2012 U.S. Dist. LEXIS 76660 (S.D.N.Y. June 1, 2012)...........................................6

*Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504 (S.D.N.Y. 2010)......................................11

*Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 CV 8629,
    2013 U.S. Dist. LEXIS 132777 (S.D.N.Y. Sept. 16, 2013).......................................4,8

*Racey v. Jay-Jay Cabaret, Inc.*, No. 15 Civ. 8228,
    2016 U.S. Dist. LEXIS 67879 (S.D.N.Y. May 23, 2016).........................................9,10

*Ramotar v. Lightening Roadside Assistant, Corp.*, No. 14 Civ. 7011,
    2015 U.S. Dist. LEXIS 107485 (S.D.N.Y. Aug. 11, 2015)......................................4

*Rojas v. Kalesmeno Corp.*, No. 17 Civ. 0164,
    2017 U.S. Dist. LEXIS 112491 (S.D.N.Y. July 19, 2017) .......................................5,7

*Salomon v. Adderley Indus.*, 847 F. Supp. 2d 561 (S.D.N.Y. 2012) ......................................8

*Shajan v. Barolo*, No. 10 CV 1385,
    2010 U.S. Dist. LEXIS 54581 (S.D.N.Y. June 2, 2010)...........................................7

*Vargas v. Black Forest Brew Haus, L.L.C.*, No. CV 15-4288,
    2016 U.S. Dist. LEXIS 64901 (E.D.N.Y. May 17, 2016) .......................................4,6,7,8

*Viriri v. White Plains Hosp. Med. Center*, 320 F.R.D. 322 (S.D.N.Y. 2017).........................6

*Walston v. Edward J. Young, Inc.*, No. 15 CV 457,
    2016 U.S. Dist. LEXIS 22084 (E.D.N.Y. Feb. 22, 2016).........................................5,7

*Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17 Civ. 273,
    2018 U.S. Dist. LEXIS 53625 (S.D.N.Y. Mar. 28, 2018) .........................................11

**Statutes, Rules, and Regulations**

29 U.S.C. § 255 ............................................................................................................4

29 U.S.C. § 256 ............................................................................................................4

Fed. R. Civ. P. 72 ......................................................................................................1,3

**I. PRELIMINARY STATEMENT**

Pursuant to Fed. R. Civ. P. 72(a), Plaintiffs submit their objections to Magistrate Judge Aaron's August 15, 2019 Order (the "Order") denying Plaintiffs' motion to conditionally certify a Fair Labor Standards Act ("FLSA") collective. Plaintiffs easily made the modest factual showing to warrant certification and the dissemination of notice. The Order was clearly erroneous or contrary law because it did not properly consider all of Plaintiffs' evidence and misapplied the conditional certification standard. To be sure, Plaintiffs made a more robust showing than necessary to satisfy the low burden for conditional certification at the first step of the certification process. Accordingly, this Court should set aside the Order and grant Plaintiffs' motion.

**II. BACKGROUND**

Plaintiffs worked for Defendants as runners and bussers at their Manhattan restaurant, which was called Luce until the end of February 2018, when it was renamed. (Order at 2.) Plaintiffs have alleged, *inter alia*, that Defendants violated the FLSA by failing to pay them and other service employees any overtime compensation when the restaurant was called Luce. (*Id.*)

On July 9, 2019, Plaintiffs moved to conditionally certify an FLSA collective consisting of servers, runners, and bussers employed by Defendants between July 9, 2016 and February 28, 2018 and send a notice of pendency to potential opt-in plaintiffs. (Dkt. Nos. 17-22.) Plaintiffs' evidentiary submission consisted of the following:

1. All Plaintiffs' descriptions in their declarations of being paid for 40 hours when they worked more than 40 hours in a week. (Guaman Decl. (Dkt. No. 20) ¶¶ 3-6; Morales Decl. (Dkt. No. 21) ¶¶ 3-6; Nieto Decl. (Dkt. No. 22) ¶¶ 3-6.)

2. Payroll records and tip sheets that substantiated Plaintiffs' allegations of working more than 40 hours and being paid for 40 hours only. (Guaman Decl. ¶¶ 7-10 & Exs. 1 & 2;

1

Morales Decl. ¶¶ 8-11 & Exs. 1 & 2; Nieto Decl. ¶¶ 7-11 & Exs. 1 & 2.) Moreover, Defendants' own submission of Plaintiffs' earnings statements from the time the restaurant was called Luce reflect that Plaintiffs were not paid for more than 40 hours a week. (Mila Decl. (Dkt. No. 24) Ex. B at 1-3, 5-11.)

3. Plaintiffs Guaman and Nieto's descriptions in their declarations of conversations with two Luce servers – Armend Rexha and Leutrim Pllana – in which the servers complained of not being paid for overtime hours worked, which is precisely the claim for which Plaintiffs seek conditional collective certification. (Guaman Decl. ¶ 11; Nieto Decl. ¶ 13.)

4. Tip sheets – from which Defendants redacted all names but Plaintiffs – that show that servers worked overtime, applying the shift lengths identified by Plaintiffs.[1] (Guaman Decl. ¶¶ 4, 7-8 & Ex. 1; Morales Decl. ¶¶ 4, 8-9 & Ex. 1; Nieto Decl. ¶¶ 4, 9-10 & Ex. 2.)

5. Plaintiffs Morales and Nieto's statements in their declarations that Defendants did not use a timekeeping system for most of their employment, a fact that Defendants confirmed in their opposition papers. (Morales Decl. ¶ 7; Nieto Decl. ¶ 8; Mila Decl. ¶ 4 (identifying 2017 as the year when Defendants began using a timekeeping system).)

After full briefing, Judge Aaron denied Plaintiffs' motion without prejudice on August 15, 2019, finding that "there is an inadequate basis for the Court to infer that there are other employees similarly situated to the three Plaintiffs." (Order at 5-6.) Specifically, Judge Aaron concluded that

---

[1] At Luce, double shifts included at least 9.5 hours of work time (and often more), and dinner shifts included at least seven hours of work time (and often more). (Guaman Decl. ¶ 4; Morales Decl. ¶ 4; Nieto Decl. ¶ 4.) Tip sheet entries for servers, runners, and bussers with a diagonal slash separating two numbers indicate that the person worked a double, and entries for those positions with a single number indicate that the person worked a dinner shift only. (Guaman Decl. ¶ 8; Morales Decl. ¶ 9; Nieto Decl. ¶ 10.) Thus, the servers listed on the first, fourth, and fifth lines of Guaman Ex. 1 and the first line of Nieto Ex. 2 worked three doubles plus two dinners – or at least 42.5 hours – the weeks ending August 6, 2017 and June 18, 2017, respectively; the server listed on the first line of Morales Ex. 1 worked four doubles and two dinners – or at least 52 hours – the week ending May 21, 2017; and the server listed on the fifth line of Nieto Ex. 2 worked two doubles and four dinners – or at least 47 hours – the week ending June 18, 2017.

2

the only evidence Plaintiffs submitted concerning potentially similarly situated employees were Plaintiffs Guaman and Nieto's descriptions of their conversations with Rexha and Pllana, and those conversations did not satisfy the conditional certification standard. (*Id*. at 6.)

### III. ARGUMENT

#### A. Fed. R. Civ. P. 72(a) Standard

Pursuant to Federal Rule of Civil Procedure 72, a party may object to a magistrate judge's order on a non-dispositive matter within 14 days of service of the order. Fed. R. Civ. P. 72(a). Upon a timely objection, a district court must "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Gaston v. Valley Nat'l Bancorp*, No. 17 CV 1886, 2018 U.S. Dist. LEXIS 148388, at *2 (E.D.N.Y. Aug. 30, 2018) (internal quotation marks omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* at *3 (internal quotation marks omitted).

#### B. The Order Was Clearly Erroneous And/Or Contrary To Law

Plaintiffs respectfully submit that Judge Aaron's denial of Plaintiffs' motion for conditional collective certification was clearly erroneous and/or contrary to law because the Order failed to properly consider the totality of evidence submitted by Plaintiffs and mis-applied the lenient standard for conditional collective certification at this early stage of litigation.

The two-step process for conditional collective certification is well-settled in this Circuit:

> First, the court makes an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether an FLSA violation has occurred. At this stage, a plaintiff need only make a modest factual showing that he and other potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. The standard of proof is low because the purpose of this first stage is merely to determine *whether* similarly

3

situated plaintiffs do in fact exist.

*Ramotar v. Lightening Roadside Assistant, Corp.*, No. 14 Civ. 7011, 2015 U.S. Dist. LEXIS 107485, at *2-3 (S.D.N.Y. Aug. 11, 2015) (Daniels, J.) (internal quotation marks, citations, and alterations omitted). At the first stage, "the court must draw all inferences in favor of the plaintiff[.]" *Vargas v. Black Forest Brew Haus, L.L.C.*, No. CV 15-4288, 2016 U.S. Dist. LEXIS 64901, at *8 (E.D.N.Y. May 17, 2016) (internal alterations and quotation marks omitted); *see also Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 CV 8629, 2013 U.S. Dist. LEXIS 132777, at *13 (S.D.N.Y. Sept. 16, 2013) (same). Later in the litigation, typically after full discovery, "the court . . . decides whether the opt-in plaintiffs in the collective action are in fact similarly situated to the named plaintiffs, and decertifies the class if the record reveals that they are not." *Ramotar*, 2015 U.S. Dist. LEXIS 107485, at *3 (internal quotation marks, citations, and alterations omitted).

Plaintiffs' evidentiary submissions described *supra* easily satisfy the modest factual showing necessary to authorize notice to potential opt-in plaintiffs at this early stage, and Judge Aaron's finding to the contrary was clearly erroneous and/or contrary to law. The higher standard that Judge Aaron applied to Plaintiffs' first-step certification motion would make it extremely difficult for plaintiffs to make conditional certification motions before engaging in significant discovery, as the type of evidence he demanded is generally in the hands of defendants or third parties rather than plaintiffs. Such a standard would undermine the remedial purpose of the FLSA, as, unless otherwise tolled, the statute of limitations continues to run on each employee's claim until she files her written consent form with the Court, 29 U.S.C. §§ 255, 256(b). Early notice to putative opt-in plaintiffs of a pending FLSA action is therefore critical to ensure that their claims are not diminished or extinguished.

Plaintiffs' evidence concerning their individual overtime claims and their descriptions of

4

conversations with two servers who complained of similar violations are sufficient – without more – to make the modest factual showing needed for conditional collective certification. *Rojas v. Kalesmeno Corp.*, No. 17 Civ. 0164, 2017 U.S. Dist. LEXIS 112491 (S.D.N.Y. July 19, 2017) ("To meet this burden, the plaintiffs' own declarations or the declarations of other class members are sufficient. Indeed, courts have granted motions for conditional certification where only one plaintiff submitted a declaration."); *see also Walston v. Edward J. Young, Inc.*, No. 15 CV 457, 2016 U.S. Dist. LEXIS 22084, at *13-14 (E.D.N.Y. Feb. 22, 2016) ("[I]t is well-recognized that the burden at the conditional certification stage is so low that Plaintiff's lone affidavit setting forth a common payment scheme may suffice."). This alone is grounds for reversing the Order and granting Plaintiffs' motion.

For example, in *Rojas v. Kalesmeno Corp.*, the court certified a collective with respect to overtime claims where the three plaintiffs stated that they were not paid an overtime premium and "each plaintiff states that he has learned that other employees are subject to these policies through personal observation and conversations with those employees." 2017 U.S. Dist. LEXIS 112491, at *8. At this stage of litigation, "these sorts of declarations describing conversations with co-workers are sufficient to establish a factual nexus between Plaintiffs and putative collective action members. These allegations are specific, non-conclusory, and properly allege the existence of a common plan and similarly-situated plaintiffs." *Id*. at *8-9 (internal quotation marks, alterations, and citations omitted).

In *Chen v. Oceanica Chinese Rest., Inc.*, No. CV 13-4623, 2014 U.S. Dist. LEXIS 46007 (E.D.N.Y. Feb. 28, 2014), conditional certification was granted based on four largely identical declarations in which plaintiffs stated that they did not receive all minimum wage and overtime compensation due and asserted that other employees were treated similarly based on observations

and conversations. *Id*. at *3, 9.  The court found that this was sufficient, because the

> plaintiff-declarants here have personally asserted that they were paid below minimum wage (and do so by providing details about their job ti[t]les, functions, compensation rates, and hours worked), and aver that other employees were underpaid as well.  Conditional certification has been granted in other cases with far less robust evidentiary support.

*Id*. at *11-12 (internal citations omitted).  Similarly, conditional certification was granted in *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265, 2012 U.S. Dist. LEXIS 76660 (S.D.N.Y. June 1, 2012), because "plaintiff has submitted a declaration . . . confirming that she and other non-exempt employees employed by defendants in tipped positions, who performed work similar to hers, were, *inter alia*, paid less than the statutory minimum wage and not paid overtime pay.  Courts have approved conditional collective action certification under similar circumstances." *Id*. at *4 (internal citation omitted).  *See also*, *e.g.*, *Viriri v. White Plains Hosp. Med. Center*, 320 F.R.D. 322, 349 (S.D.N.Y. 2017) (certifying collective where plaintiff submitted a declaration identifying two coworkers who stated that they were not paid for all hours worked and were not paid overtime compensation); *Vargas*, 2016 U.S. Dist. LEXIS 64901, at *7-8 (certifying collective where plaintiff identified several co-workers who discussed defendants' practice of paying straight time for overtime hours worked); *Escamilla v. Uncle Paul's Pizza & Café Inc.*, No. 16 CV 06305, 2017 U.S. Dist. LEXIS 206731, at *10-11 (S.D.N.Y. May 18, 2017) (certifying collective where plaintiff identified specific co-workers with whom he discussed FLSA violations).

Even if the Plaintiffs' descriptions of their conversations with Rexha and Pllana were insufficient to warrant conditional collective certification (as set forth above, the case law shows that those descriptions were in fact sufficient), Judge Aaron erred in concluding that "the only evidence submitted by the Plaintiffs as to the existence of possibly similarly situated employees

6

are statements by Plaintiffs Guaman and Plaintiff Nieto, but not Plaintiff Morales, that the two servers, Rexha and Pllana, had told Guaman and Nieto that they were not paid overtime." (Order at 6 (internal citations omitted).) Judge Aaron mistakenly linked this conclusion to the fact that the "other restaurant employees identified by two of the Plaintiffs worked in different jobs, as servers, and no information is provided as to the hours they worked." (*Id.*)

In fact, it is immaterial that Rexha and Pllana worked as servers whereas Plaintiffs worked as runners and bussers because job titles and duties have no bearing on Defendants' common policy of not paying employees overtime compensation.[2] *E.g.*, *Rojas*, 2017 U.S. Dist. LEXIS 112491, at *9-10 ("The defendants also argue that the other employees . . . are not similarly situated because they have different titles and responsibilities from the named plaintiffs. But the plaintiffs need not show that all proposed collective action members held identical jobs or were subject to identical treatment; rather, certification is appropriate where all putative class members are employees of the same enterprise and allege the same types of FLSA violations.") (internal quotation marks, citations, and omissions omitted); *Walston*, 2016 U.S. Dist. LEXIS 22084, at *13 ("[T]he issue of 'similarly situated' refers not to similarity of job duties, but to similarity in pay structure. Thus, courts in this district and elsewhere routinely reject attempts to limit certification based on alleged dissimilarity of job function."); *Vargas*, 2016 U.S. Dist. LEXIS 64901, at *7-8 (certifying collective for overtime claims consisting of "back of house" employees where the plaintiffs identified coworkers who complained of being paid straight time for overtime even though the plaintiffs did "not specifically identify the job duties of other employees referenced in their affidavits"); *Shajan v. Barolo*, No. 10 CV 1385, 2010 U.S. Dist. LEXIS 54581, at *3 (S.D.N.Y. June 2, 2010) (certifying collective consisting of servers, bartenders, runners, and

---

[2] In contrast, job duties could be relevant to the similarly situated analysis in a misclassification case.

7

bussers and characterizing as "ridiculous" the defendants' argument that because "plaintiffs have failed to specify what their job duties are, [they] have not established that they and the other members of the proposed class are similarly situated").

In addition, Plaintiffs did provide information as to the hours Rexha and Pllana worked. Plaintiffs Guaman and Nieto's declarations state that Rexha and Pllana both stated that they worked uncompensated overtime, or more than 40 hours per week. (Guaman Decl. ¶ 11; Nieto Decl. ¶ 13.) To establish that putative opt-in plaintiffs are similarly situated, it is not necessary to state their hours worked with precision. If they worked anything more than 40 hours per week and were only paid for 40 hours, they have an overtime claim, whether that claim is for 30 minutes or 30 hours, and they are similarly situated to Plaintiffs. *See*, *e.g.*, *Salomon v. Adderley Indus.*, 847 F. Supp. 2d 561, 564 (S.D.N.Y. 2012) (certifying collective for overtime claim where plaintiffs alleged based on conversations and observations that coworkers also worked more than 40 hours per week and identified specific coworkers who "told Plaintiffs they were not paid overtime for the hours they worked in excess of forty hours").

Moreover, Judge Aaron ignored the undisputed fact that Defendants did not implement a timekeeping system until sometime in 2017. This fact is highly significant, as it would be exceedingly difficult for Defendants to accurately compensate employees for their hours worked without any form of timekeeping. In light of Plaintiffs' allegations and supporting documents concerning their own unpaid overtime work and the complaints of Rexha and Pllana that they were not paid for overtime, this lends further support to the contention that servers worked unpaid overtime and warrants conditional collective certification. *Mendoza*, 2013 U.S. Dist. LEXIS 132777, at *14 (noting that employment records "show that [defendant] did not record the length of any identified employee's shift, but rather simply indicated the days on which

8

employees appeared for work. This record-keeping practice conforms to Plaintiff's characterization of [defendant's] practices. This testimonial and documentary evidence suggests strongly that Ashiya Sushi 5 did not maintain sufficient records, and did not perform sufficient record-keeping operations, to pay its employees a lawful hourly wage. Plaintiff has thus adequately demonstrated that 'similarly situated' plaintiffs exist.").

Judge Aaron also erred in disregarding the tip sheets that show that servers worked overtime at Luce because "those tip sheets do not identify the servers by name, and do not reflect what those servers were paid for the hours worked."[3] (Order at 6 n.6.) The tip sheets show that for the periods covered (which are three weeks between May 15, 2017 and August 6, 2017), only four or five servers worked per week. The tip sheet for the week ending August 6, 2017 shows that three out of four servers worked shifts that add up to more than 40 hours per week. (Guaman Ex. 1; *see also supra* n.1.) Thus, the tip sheets show that overtime work was widespread among the small number of servers employed by Defendants at one time. The commonness of overtime work as reflected in the tip sheets lends further credence to Plaintiffs Guaman and Nieto's reports of Rexha and Pllana complaining about not being paid for overtime. Both the tip sheets and Defendants' lack of timekeeping therefore support the inference that Defendants failed to pay servers, runners and bussers overtime, particularly in light of the other information in Plaintiffs' declarations. In disregarding this evidence, Judge Aaron improperly failed to "draw all inferences in favor of the plaintiff[s.]" *Vargas*, 2016 U.S. Dist. LEXIS 64901, at *8 (internal quotation marks and alteration omitted).

In fact, Plaintiffs' evidence is similar to or more robust than that in two cases cited by Judge Aaron in which conditional certification was granted. *Racey v. Jay-Jay Cabaret, Inc.*, No. 15 Civ.

---

[3] Defendants redacted all names except for Plaintiffs' from the tip sheets they produced.

9

8228, 2016 U.S. Dist. LEXIS 67879 (S.D.N.Y. May 23, 2016); *Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516 (S.D.N.Y. 2015).  In *Racey*, the plaintiffs submitted declarations stating that they worked longer than their scheduled shifts, resulting in their working more than 40 hours per week, but were not paid overtime compensation.  2016 U.S. Dist. LEXIS 67879, at *4-5.  The plaintiffs stated that they knew of coworkers who were subjected to the same practices, and one plaintiff stated that employees that he worked with were also required to work past the ends of their shifts.  *Id*. at *6, 11.  From this, the court concluded that it "can fairly infer that other floor men labored under similar working conditions and thus suffered the same violations of the FLSA." *Id*. at *11-12 (internal quotation marks omitted).  Like the *Racey* plaintiffs, Plaintiffs here have adequately described working more than 40 hours without overtime compensation, know of coworkers who were subjected to the same practices (*i.e.*, Rexha and Pllana), and provided evidence, in the form of tip sheets and Plaintiffs' descriptions of shift lengths, that other employees also worked more than 40 hours.

In *Guzman*, the court granted conditional certification where the plaintiffs described the wage and hour violations they experienced and "state[d] that their own personal knowledge and conversations with other individuals at Cheetahs, including the other plaintiffs as well as six other workers identified by their initials or their first name, have allowed plaintiffs to conclude that these practices applied to all of the entertainers at Cheetahs."  117 F. Supp. 3d at 524.  Based on this, the court "fairly inter[red] that other entertainers labored under similar working conditions and thus suffered the same violations of the FLSA."  *Id*. (internal quotation marks omitted).  Plaintiffs' evidence is even more robust than that in *Guzman*, as Plaintiffs have described in greater detail than the *Guzman* plaintiffs their conversations with Rexha and Pllana.  The *Guzman* court also noted that it was important that

all five plaintiffs observed essentially identical violations at the same location during the same time periods. "It is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA.

*Id*. at 524.  As in *Guzman*, here the Plaintiffs have also described identical violations during the same time period.[4]

## IV. CONCLUSION

For the foregoing reasons, the Order was clearly erroneous or contrary to law, and Plaintiffs' motion for conditional collective certification should be granted.

Dated: New York, New York
      August 27, 2019

JOSEPH & KIRSCHENBAUM LLP

By: /s/ Denise A. Schulman
    D. Maimon Kirschenbaum
    Denise A. Schulman
    32 Broadway, Suite 601
    New York, New York 10004
    (212) 688-5640

*Attorneys for Plaintiffs, proposed FLSA Collective, and proposed Class*

---

[4] *Lin v Benihana Nat'l Corp.*, 755 F. Supp. 2d 504 (S.D.N.Y. 2010) and *Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17 Civ. 273, 2018 U.S. Dist. LEXIS 53625 (S.D.N.Y. Mar. 28, 2018), also cited in the Order, are inapposite. In *Lin*, the court did not conditionally certify a minimum wage claim because insufficient information was provided about the pay rates for the court to conclude that anyone was paid below the minimum wage.  Here, where Plaintiffs allege that Defendants did not pay employees for overtime hours worked at all, the specific rate owed is not relevant.  The *Lin* court also denied certification of overtime claims because none of the plaintiffs stated that they were aware of other employees who were denied overtime compensation.  In contrast, the Plaintiffs in this case have identified two such individuals.  In *Weng*, court found that the plaintiffs' declarations were vague and conclusory, as well as internally inconsistent as to the declarants' dates and locations of employment, which likely further undercut their evidentiary value.  2018 U.S. Dist. LEXIS at *11-13 & n.2.  Those problems are not present here.  Plaintiffs have described Defendants' practice of not paying overtime compensation, identified two servers who complained of that exact violation, and provided documentary evidence showing that servers worked more than 40 hours per week.

11